No. 633

First Circuit

———

THOMAS v. LONG-BELL LUMBER CO.

———

(June 30, 1930. Opinion and Decree.)

———

24

Ped C. Kay, of De Ridder, attorney for plaintiff, appellant.

Frank E. Powell, of De Ridder, attorney for defendant, appellee.

ELLIOTT, J. Dr. John H. Thomas was employed by Long-Bell Lumber Company to do their mill practice at De Ridder.

According to plaintiff, he understood by the term De Ridder that he was to do the mill practice only in the town of De Ridder, and that defendant's practice at Bon Ami and Ludington was not within the region of his employment.

He claims in this suit that his work at Bon Ami and Ludington was extra work for which he is entitled as a quantum meruit to $3,300.

But according to Mr. Sailor, defendant's general manager, plaintiff's region of employment was not limited to the town of De Ridder; his employment gave defendant the right to have him do their practice at Bon Ami and Ludington, nearby places, at which defendant also operated sawmills.

According to defendant's manager, when plaintiff was first employed, the sawmill at De Ridder was operated by a double shift, one of which worked in the daytime, the other at night. That in the double shift there were working at the time in De Ridder 438 men. That afterwards their night shift was taken off, which reduced their employees at De Ridder to 281 men.

Concerning plaintiff's work at Bon Ami, Mr. Sailor's version of the matter is as follows:

"I explained to him that we were going to abandon our camp at Hoy; that we had Dr. Douglas looking after our men at Hoy, and in so much as we expected to move them into Bon Ami, I wondered if he couldn't find time along with his present duties to take care of that work, so we could relieve ourselves of Dr. Douglas' services.

"Q. That was the proposition you made to him? What did he say?

"A. He said, absolutely, he could take care of that work, he had plenty of time."

The witness testified that plaintiff had only 30 or 35 men to be waited on at Bon Ami, the mill there having been closed down at the time plaintiff took charge of its practice. The testimony of Mr. Sailor as to what he claims to have said to Dr. Thomas at the time he was placed in charge of defendant's practice at Bon Ami is quoted as showing defendant's contention as to the territory which plaintiff's employment covered. According to him, Bon Ami and Ludington were both within the territory of De Ridder.

We will not concern ourselves further about plaintiff's service at Bon Ami, because defendant urged the prescription of three years against that claim. This plea of prescription was sustained in the lower court, and the record contains a written agreement entered into in the lower court whereby the plaintiff acquiesced in the ruling of the lower court, thereby eliminating from the case that part of plaintiff's demand, reducing his demand to $1,500 for extra work done at Ludington. The evidence shows that defendant had also closed down its mill at Ludington at the time plaintiff was sent there, and that all but a few of the employees there had been released.

According to the evidence, at the time plaintiff took charge of defendant's practice at Ludington the number of men there

was less than were at Bon Ami, and his work at Ludington did not commence until his practice at Bon Ami had ceased.

Defendant's object in having plaintiff look after its men at Ludington was in order that the regular physician there might be released and the expense of his employment saved.

Plaintiff took over defendant's practice at Ludington at defendant's request, similar to that made when he took over the work at Bon Ami.

Defendant contends that there was no obligation on its part to pay plaintiff extra compensation. There was no expectation of paying or being paid, and nothing said about paying extra on that account.

There is a conflict in the testimony between the plaintiff and defendant's manager on this subject.

The plaintiff says that when Mr. Sailor requested him to do the work at Bon Ami, he told him he could do anything for more money; but he admits that save for the statement which he claims to have made, himself, there was nothing said about compensation and no amount agreed on.

The plaintiff produced two witnesses who testify that they heard a man come up to plaintiff and ask him if he could do the mill practice at Bon Ami with his other work, and that plaintiff replied he could do anything for more money. These witnesses testified that they did not know the man who made the request. Mr. Sailor, defendant's manager, denied having had any conversation with the plaintiff on the street at the place and in the manner described by the plaintiff and these witnesses.

The district judge for written reasons adopted that view. We have examined the testimony of the plaintiff and of these witnesses, and we are not convinced that the district judge was in error on the subject.

The plaintiff is a physician, and the evidence indicates that he supports himself by his practice. When he retired from defendant's employment, there was a settlement between them, which defendant contends was a full and final adjustment and that plaintiff claimed nothing more. Plaintiff admits that he did not at the time make any claim to any further sum due him. Several months passed before plaintiff made claim for the compensation which he now contends is due him. If he had felt that the sum of $3,300 or a one-third or even one-fourth of that sum was due him by this defendant as a quantum meruit for his work at Bon Ami and Ludington at the time of their settlement, there would have been such a strong impulse on his part to bring it forward and have it acted on; that it requires a showing better than we feel has been made to establish that such a claim really existed, and was passed up with nothing said about it.

The plaintiff presents a very earnest argument in support of his claim, but the burden of proof was upon him to establish all material facts necessary for his recovery. If the facts be as he claims, he has nobody but himself to blame for not being in position to give more satisfactory proof in support of his claim.

The district judge rejected plaintiff's demand.

There is no manifest error in so doing; it was the proper judgment to render, under the showing made.

Judgment affirmed. Plaintiff and appellant to pay the cost in both courts.